Michael A. Galpern
Andrew P. Bell
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Ste 500
Cherry Hill, NJ 08002
(856) 663-8200
    - and –
747 Third Avenue, 37th Floor
New York, NY 10017
(212) 838-3333
www.lockslaw.com

Attorneys for Plaintiffs and the Class


UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER L. MENKES and STEPHEN J. WOLFE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, QINETIQ NORTH AMERICA OPERATIONS, LLC, a Delaware corporation, QINETIQ NORTH AMERICA, INC., a Delaware corporation, WESTAR AEROSPACE & DEFENSE GROUP, INC., a Nevada corporation, and DOES 1-100 (presently known individuals, partnerships, companies and/or other entities), inclusive <br><br> Defendants. | Civil Action No.: <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** <br><br> 1. Violation of the NJ Consumer Fraud Act <br> 2. Violation of the NJ Truth in Consumer Contract, Warranty and Notice Act <br> 3. Breach of Contract and Implied Covenant Good Faith and Fair Dealing <br> 4. Intentional/Negligent Misrepresentation and/or Omission <br> 5. Punitive Damages <br> 6. Alternatively, Violation of States' Deceptive Practices Acts |

Plaintiffs, Alexander L. Menkes and Stephen J. Wolfe (collectively "Plaintiffs"), by and through their attorneys, LOCKS LAW FIRM, LLC, on behalf of themselves and all other persons and entities similarly situated, allege as follows:

## INTRODUCTION

1.    This is a consumer fraud class action lawsuit against Defendants The Prudential Insurance Company Of America ("Prudential"), QinetiQ North America Operations, LLC ("QinetiQ LLC"), QinetiQ North America, Inc. ("QinetiQ NA"), Westar Aerospace & Defense Group, Inc. ("Westar") (collectively "Defendants") for violations of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 58:8-1 ("CFA"), *et seq.*, for violations of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-15, *et seq.* ("TCCWNA"), breach of contract, intentional/negligent misrepresentations and/or omissions, punitive damages, and alternatively, for violations of states' consumer fraud/deceptive practices acts, all brought on behalf of members of the Class and Claimant Subclass as defined herein.  Plaintiffs seek injunctive, monetary and/or other relief against Defendants for the reasons set forth below.

2.    Defendants engaged in deceptive and unconscionable practices against Plaintiffs and members of the Class by drafting, designing, marketing, advertising, and selling Buy-Up Long Term Disability policies ("Buy-Up LTDs"), "Supplemental Term Life   Insurance" policies ("Suppl. LIP"), and "Supplemental Accidental Death & Dismemberment Insurance" policies ("Suppl. AD&D"), all issued by Prudential with exclusions from coverage based upon "disability due to war, declared or undeclared, or any act of war" or similar language for the respective policies ('Wartime Exclusions") to

2

Plaintiffs and members of the Class, as specifically defined herein, who were employees of defense contractors Defendants QinetiQ LLC, QinetiQ NA and/or Westar, and/or other defenses contractors who provided services on U.S. bases in Iraq and/or Afghanistan pursuant to contracts and/or subcontracts with the United States Department of Defense ("DOD"), knowing that such policies would be of negligible or no value and that Prudential would deny the insurance claims based upon the Wartime Exclusion.

3.    As a result of Defendants' conduct, Plaintiffs and members of the Class purchased the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds, which were of negligible or no value to them, and when Plaintiff Menkes and members of the subclass of Buy-Up LTD, Suppl. LIP and/or Suppl. AD&D claimants ("Claimant Subclass", as defined specifically herein), made claims for coverage benefits pursuant to such insurance policies, Prudential denied such claims based upon the Wartime Exclusions.

4.    As a result of Defendants' conduct, Plaintiffs and the members of the Class were damaged and suffered out-of-pocket losses in the amounts they paid as premiums for the worthless Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds, and Plaintiff Menkes and members of the Claimant Subclass were further damaged in not receiving disability coverage for their lost income and/or benefits suffered due to injuries, death and/or dismemberment occurring in the "wartime" conditions and/or as a result "acts of war" in Iraq and/or Afghanistan where they were performing the job duties known, intended and expected to be performed by the Defendants.

5.    At all relevant times alleged in this matter Defendants acted in concert with, and with the knowledge and approval of and/or as the agent of the each other and

unknown other defense contractors within the course and scope of the agency, regarding the acts and omissions alleged herein.

6.     Accordingly, Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated defense contractor employees for violations of the CFA, violations of the TWCCNA, breach of contract, intentional/negligent misrepresentations and/or omissions, punitive damages, and alternatively, for violations of states' consumer fraud/deceptive practices acts.  Plaintiffs on behalf of themselves and members of the Class and/or Claimant Subclass seek injunctive, monetary and/or other relief against Defendants for the reasons set forth below.

## PARTIES

7.     During all relevant time period, Plaintiff Alexander L. Menkes was and is a resident of Florida.

8.     During all relevant time period, Plaintiff Stephen J. Wolfe was and is a resident of Kentucky.

9.     Defendant Prudential is a New Jersey corporation with a principal place of business at 751 Broad Street, Newark, New Jersey 07102, where it employs hundreds of people.  Prudential does substantial business in New Jersey, as well as throughout the United States.

10.   Defendant QinetiQ LLC is or was a Delaware corporation with a principal place of business at 7918 Jones Branch Drive, Suite 350, McLean, Virginia.  QinetiQ LLC does or did substantial business in New Jersey, as well as throughout the United States.

11.  Defendant QinetiQ NA is a Delaware corporation with a principal place of business at 7918 Jones Branch Drive, Suite 350, McLean, Virginia.  QinetiQ NA does substantial business in New Jersey, as well as throughout the United States.

12.  Defendant Westar is a Delaware corporation with a principal place of business at 36 Research Park Court, St. Louis, Missouri.  Westar does substantial business in New Jersey, as well as throughout the United States.

13. The Defendants DOES 1-100 are the names of presently unknown individuals, partnerships, corporations, companies and/or other entities that are liable to the Plaintiffs and members of the Class and/or Claimant Subclass for the misconduct alleged herein, that engaged in the misconduct alleged herein.  Plaintiffs reserve the right to amend the Complaint to include these unknown individuals/entities should their identity be revealed in discovery.

## JURISDICTION AND VENUE

14.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 class members and because the amount in controversy, upon information and belief, exceeds five million dollars ($5,000,000) exclusive of interest and costs, and at least one Class member is a citizen of a state different from Defendants.

15.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as Defendant Prudential is a resident of the State of New Jersey, and Defendants QinetiQ LLC, QinetiQ NA and Westar do business in this State and a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial district.

16.   The federal courthouse located in Newark, New Jersey is the proper vicinage for this matter because Defendant Prudential is located in Newark, New Jersey.

## FACTS COMMON TO ALL CLAIMS

17.   Defendants are corporations with revenues of or valued at several billions and/or millions of dollars every year.

### The Prudential Buy-Up Long Term Disability Policies (Buy-Up LTDs)

18.   Defendant Prudential designed and drafted the terms and conditions set forth in the Buy-Up LTDs at issue (upon information and belief, a copy of the Buy-UP LTD at issue is attached hereto as Exhibit "A" and is incorporated herein as if fully set forth).

19.   On page 4, the "Certificate of Coverage", the Buy-Up LTDs provide that:

> This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured…. The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

20.   On page 20, under the section "What Disabilities Are Not Covered Under Your Plan?", the Buy-Up LTDs provide that:

> Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

21.   On page 31 of the Buy-Up LTDs, under the section "What Are the Time Limits for Legal Proceedings?", the Buy-Up LTDs provide that:

> You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

22. At the time Plaintiffs and each member of the Class were given or shown and/or entered into Buy-Up LTDs, the relevant and material terms of the Buy-Up LTDs were identical or substantially the same, and thus, Defendants have the same obligations to Plaintiffs and members of the Class and/or Claimant Subclass.

23. The securing of disability benefits for Plaintiffs and members of the Class who were known by Defendants to be stationed at United States military bases in Iraq and/or Afghanistan should have covered any and all disabilities due to the employees being in Iraq and/or Afghanistan regardless of any Wartime Exclusions.

24. Defendants knew that the Prudential Buy-Up LTDs containing Wartime Exclusions would be of negligible value and/or of no value to Plaintiffs and members of the Class who may and/or did suffer disabilities due to injuries occurring in Iraq and/or Afghanistan where they were performing their job duties.

25. Defendants and other such unknown defense contractors, acting through each other and/or their officers, agents, servants, representatives, or employees, displayed, gave, offered and entered into Prudential Buy-Up LTDs to and with Plaintiffs and members of the Class, Defendants knew that Plaintiffs and members of the Class, who were performing their services under DOD contracts and/or subcontracts in Iraq and/or Afghanistan, which was considered by Prudential to be a war zone and/or where daily and/or weekly "acts of war" were occurring.

26. Defendants and other such unknown defense contractors, acting through each other and/or their officers, agents, servants, representatives, or employees, displayed, gave, offered and entered into Prudential Buy-Up LTDs to and with Plaintiffs

and members of the Class, Defendants knew that Prudential would deny benefits, based upon the Wartime Exclusions, should claims be made.

27. Despite this knowledge, Defendants, acting through each other and/or their officers, agents, servants, representatives, or employees, nevertheless misrepresented to Plaintiffs and members of the Class that the Prudential Buy-Up LTDs would provide disability coverage and protection while Plaintiffs and members of the Class performed their job duties in Iraq and/or Afghanistan.

28. Despite this knowledge, Defendants, acting through each other and/or their officers, agents, servants, representatives, or employees, nevertheless omitted to disclose to Plaintiffs and members of the Class that the Prudential Buy-Up LTDs would not provide disability coverage and protection while Plaintiffs and members of the Class performed their job duties in Iraq and/or Afghanistan because of the Wartime Exclusions.

29. Defendants intended that Plaintiffs and members of the Class would rely upon Defendants' representations and/or it is likely that Defendants' omissions would mislead a reasonable consumer/employee acting reasonably under the circumstances.

30. Defendants knew or should have known that the Buy-Up LTDs would not provide disability coverage to Plaintiffs and members of the Class. Despite this knowledge, Defendants nevertheless displayed, gave, offered and entered into Prudential Buy-Up LTDs to and with Plaintiffs and members of the Class, thereby rendering Defendants' conduct unconscionable.

31. Defendants intended that Plaintiffs and members of the Class and/or Claimant Subclass would rely upon the Buy-Up LTDs and Defendants' representations

that the Buy-Up LTDs were a package of benefits that Plaintiffs and members of the Class and/or Claimant Subclass could pay for so as to secure benefits while performing their duties on United States military bases in Iraq and/or Afghanistan.

32. Defendants warranted and held out the Buy-Up LTDs as providing disability coverage for the time period that Plaintiffs and members of the Class were performing their duties in Iraq and/or Afghanistan.

33. Defendant Prudential displayed, gave, offered and/or entered into Buy-Up LTDs with Plaintiffs and members of the Class.

34. Defendant Prudential supplied terms and conditions in the Buy-Up LTDs to the other Defendants, who then also displayed, gave and/or offered them to Plaintiffs and members of the Class.

35. Defendants deliberately concealed material facts regarding the Buy-Up LTDs, including but not limited to: (1) the Buy-Up LTDs did not provide disability benefits in the event Plaintiffs and members of the Class were injured in Iraq and/or Afghanistan; (2) Defendant Prudential would deny the disability claims of Plaintiffs and members of the Class based upon the war exclusion in the Buy-Up LTDs.

36. Defendants at all times had a duty to disclose that material information to Plaintiffs and members of the Class.

37. Defendants knew that they were selling the Buy-Up LTDs to employees of DOD contractors who would be performing their duties pursuant to such contracts at U.S. military bases in Iraq and/or Afghanistan.

38.   Even though Defendants knew that the sale of the Buy-Up LTDs to Plaintiffs and the members of the Class at the premiums and under the terms set forth would harm them because they would not provided adequate coverage, Defendants disregarded this inevitable harm to such consumers, and deliberately and continually sold and marketed the Buy-Up LTDs.

39.   Plaintiffs and members of the Class reasonably expected that the Buy-Up LTDs would provide adequate disability coverage to cover their acts and work performance for the time period they were performing work at U.S. military bases in Iraq and/or Afghanistan.

40.   If Defendants had not misrepresented and concealed material information relating to the true nature of the disability and, upon information and belief, life insurance coverage provided by the Buy-Up LTDs, Plaintiffs and members of the Class would not have purchased the Buy-Up LTDs on the terms and premiums offered, if at all.

41.   Defendants concealed the true disability coverage provided by the Buy-Up LTDs and induced Plaintiffs and members of the Class and/or Claimant Subclass into agreeing to the Buy-Up LTDs with the specific and deliberate intention of reaping excessive profits as the direct expense of Plaintiffs and members of the Class and/or Claimant Subclass.

42.   By concealing the true lack of disability coverage provided by the Buy-Up LTDs, Defendants reaped tremendous profits all to the detriment of Plaintiffs and members of the Class.

43. In breach of its duty to properly disclose the above referenced facts, Defendants failed to notify Plaintiffs and members of the Class that the Buy-Up LTDs' lack of disability coverage resulted in the following: 1) employees' disabilities suffered in Iraq and/or Afghanistan not being covered and paid for by the insurance coverage Defendants were required to provide; 2) employees had to secure additional and/or alternative medical coverage and/or pay for medical treatment and evaluations that should have been covered by the Buy-Up LTDs; and 3) employees lost income and/or incurred expenses that should have been covered by the Buy-Up LTDs.

44. Despite knowing that the Buy-Up LTDs did not provide disability coverage that would apply to the acts and work performed by Plaintiffs and members of the Class in Iraq and/or Afghanistan, Defendants intentionally and willfully failed to disclose such information to the Plaintiffs and members of the Class, marketed the Buy-Up LTDs with knowledge that the disability coverage provided by them was false and misleading, and thereby, sold the Plaintiffs and members of the Class Buy-Up LTDs with a diminished or no value.

## **The Prudential Life Insurance Policies (Suppl. LIPs)**

45. Defendant Prudential designed and drafted the terms and conditions set forth in the Suppl. LIPs at issue.

46. Upon information and belief, the Suppl. LIPs contains terms and/or conditions, which provide, in substance, that the Suppl. LIPs would not cover death(s) due to Wartime Exclusions.

11

47.    At the time Plaintiffs and each member of the Class were given or shown and/or entered into Suppl. LIPs, the relevant and material terms of the Suppl. LIPs were identical or substantially the same, and thus, Defendants have the same obligations to Plaintiffs and members of the Class and/or Claimant Subclass.

48.    The securing of life insurance benefits for Plaintiffs and members of the Class who were known by Defendants to be stationed at United States military bases in Iraq and/or Afghanistan should have covered any and all deaths due to the employees being in Iraq and/or Afghanistan regardless of any Wartime Exclusions.

49.    Defendants knew that the Prudential Suppl. LIPs containing Wartime Exclusions would be of negligible value and/or of no value to Plaintiffs and members of the Class who may die in Iraq and/or Afghanistan where they were performing their job duties.

50.    Defendants and other such unknown defense contractors, acting through each other and/or their officers, agents, servants, representatives, or employees, displayed, gave, offered and entered into Prudential Suppl. LIPs to and with Plaintiffs and members of the Class, Defendants knew that Plaintiffs and members of the Class, who were performing their services under DOD contracts and/or subcontracts in Iraq and/or Afghanistan, which was considered by Prudential to be a war zone and/or where daily and/or weekly "acts of war" were occurring.

51.    Defendants and other such unknown defense contractors, acting through each other and/or their officers, agents, servants, representatives, or employees, displayed, gave, offered and entered into Prudential Suppl. LIPs to and with Plaintiffs and

members of the Class, Defendants knew that Prudential would deny benefits, based upon the Wartime Exclusions, should claims be made.

52. Despite this knowledge, Defendants, acting through each other and/or their officers, agents, servants, representatives, or employees, nevertheless misrepresented to Plaintiffs and members of the Class that the Prudential Suppl. LIPs would provide life insurance coverage and protection while Plaintiffs and members of the Class performed their job duties in Iraq and/or Afghanistan.

53. Despite this knowledge, Defendants, acting through each other and/or their officers, agents, servants, representatives, or employees, nevertheless omitted to disclose to Plaintiffs and members of the Class that the Prudential Suppl. LIPs would not provide life insurance coverage and protection while Plaintiffs and members of the Class performed their job duties in Iraq and/or Afghanistan because of the Wartime Exclusions.

54. Defendants intended that Plaintiffs and members of the Class would rely upon Defendants' representations and/or it is likely that Defendants' omissions would mislead a reasonable consumer/employee acting reasonably under the circumstances.

55. Defendants knew or should have known that the Suppl. LIPs would not provide life insurance coverage to Plaintiffs and members of the Class. Despite this knowledge, Defendants nevertheless displayed, gave, offered and entered into Prudential Suppl. LIPs to and with Plaintiffs and members of the Class, thereby rendering Defendants' conduct unconscionable.

56. Defendants intended that Plaintiffs and members of the Class and/or Claimant Subclass would rely upon the Suppl. LIPs and Defendants' representations that

the Suppl. LIPs were a package of benefits that Plaintiffs and members of the Class and/or Claimant Subclass could pay for so as to secure benefits while performing their duties on United States military bases in Iraq and/or Afghanistan.

57. Defendants warranted and held out the Suppl. LIPs as providing life insurance coverage for the time period that Plaintiffs and members of the Class were performing their duties in Iraq and/or Afghanistan.

58. Defendant Prudential displayed, gave, offered and/or entered into Suppl. LIPs with Plaintiffs and members of the Class.

59. Defendant Prudential supplied terms and conditions in the Suppl. LIPs to the other Defendants, who then also displayed, gave and/or offered them to Plaintiffs and members of the Class.

60. Defendants deliberately concealed material facts regarding the Suppl. LIPs, including but not limited to, upon information and belief: (1) the Suppl. LIPs did not provide life insurance benefits in the event Plaintiffs and members of the Class were killed in Iraq and/or Afghanistan; and (2) Defendant Prudential would deny the life insurance claims of the survivors and/or estates of Plaintiffs and members of the Class based upon the war exclusion in the Suppl. LIPs.

61. Defendants at all times had a duty to disclose that material information to Plaintiffs and members of the Class.

62. Defendants knew that they were selling the Suppl. LIPs to employees of DOD contractors who would be performing their duties pursuant to such contracts at U.S. military bases in Iraq and/or Afghanistan.

63.    Even though Defendants knew that the sale of the Suppl. LIPs to Plaintiffs and the members of the Class at the premiums and under the terms set forth would harm them because they would not provided adequate coverage, Defendants disregarded this inevitable harm to such consumers, and deliberately and continually sold and marketed the Suppl. LIPs.

64.    Plaintiffs and members of the Class reasonably expected that the Suppl. LIPs would provide adequate life insurance coverage to cover them if they were killed during the time period they were performing work at U.S. military bases in Iraq and/or Afghanistan.

65.    If Defendants had not misrepresented and concealed material information relating to the true nature of the life insurance coverage provided by the Suppl. LIPs, Plaintiffs and members of the Class would not have purchased the Suppl. LIPs on the terms and premiums offered, if at all.

66.    Defendants concealed the true life insurance coverage provided by the Suppl. LIPs and induced Plaintiffs and members of the Class and/or Claimant Subclass into agreeing to the Suppl. LIPs with the specific and deliberate intention of reaping excessive profits as the direct expense of Plaintiffs and members of the Class and/or Claimant Subclass.

67.    By concealing the true lack of life insurance coverage provided by the Suppl. LIPs, Defendants reaped tremendous profits all to the detriment of Plaintiffs and members of the Class.

68. In breach of its duty to properly disclose the above referenced facts, Defendants failed to notify Plaintiffs and members of the Class that the Suppl. LIPs' lack of life insurance coverage resulted in the employees' deaths in Iraq and/or Afghanistan not being covered and paid for by the life insurance coverage Defendants were required to provide.

69. Despite knowing that the Suppl. LIPs did not provide life insurance coverage that would apply to the acts and work performed by Plaintiffs and members of the Class in Iraq and/or Afghanistan, Defendants intentionally and willfully failed to disclose such information to the Plaintiffs and members of the Class, marketed the Suppl. LIPs with knowledge that the life insurance coverage provided by them was false and misleading, and thereby, sold the Plaintiffs and members of the Class Suppl. LIPs with a diminished or no value.

### The Prudential AD&D Insurance Policies (Suppl. AD&Ds)

70. Defendant Prudential designed and drafted the terms and conditions set forth in the Suppl. AD&Ds at issue.

71. Upon information and belief, the Suppl. AD&Ds contains terms and/or conditions, which provide, in substance, that the Suppl. AD&Ds would not cover death(s) and/or dismemberments due to Wartime Exclusions.

72. At the time Plaintiff Menkes and each member of the Class were given or shown and/or entered into Suppl. AD&Ds, the relevant and material terms of the Suppl. AD&Ds were identical or substantially the same, and thus, Defendants have the same obligations to Plaintiff Menkes and members of the Class and/or Claimant Subclass.

73.  The securing of AD&D insurance benefits for Plaintiff Menkes and members of the Class who were known by Defendants to be stationed at United States military bases in Iraq and/or Afghanistan should have covered any and all disabilities due to the employees being in Iraq and/or Afghanistan regardless of any Wartime Exclusions.

74.  Defendants knew that the Prudential Suppl. AD&Ds containing such War Exclusions would be of negligible value and/or of no value to Plaintiff Menkes and members of the Class who may die and/or be dismembered in Iraq and/or Afghanistan where they were performing their job duties.

75.  Defendants and other such unknown defense contractors, acting through each other and/or their officers, agents, servants, representatives, or employees, displayed, gave, offered and entered into Prudential Suppl. AD&Ds to and with Plaintiff Menkes and members of the Class, Defendants knew that Plaintiff Menkes and members of the Class, who were performing their services under DOD contracts and/or subcontracts in Iraq and/or Afghanistan, which was considered by Prudential to be a war zone and/or where daily and/or weekly "acts of war" were occurring.

76.  Defendants and other such unknown defense contractors, acting through each other and/or their officers, agents, servants, representatives, or employees, displayed, gave, offered and entered into Prudential Suppl. AD&Ds to and with Plaintiff Menkes and members of the Class, Defendants knew that Prudential would deny benefits, based upon the Wartime Exclusions, should claims be made.

77.  Despite this knowledge, Defendants, acting through each other and/or their officers, agents, servants, representatives, or employees, nevertheless

misrepresented to Plaintiff Menkes and members of the Class that the Prudential Suppl. AD&Ds would provide AD&D insurance coverage and protection while Plaintiff Menkes and members of the Class performed their job duties in Iraq and/or Afghanistan.

78.   Despite this knowledge, Defendants, acting through each other and/or their officers, agents, servants, representatives, or employees, nevertheless omitted to disclose to Plaintiff Menkes and members of the Class that the Prudential Suppl. AD&Ds would not provide AD&D insurance coverage and protection while Plaintiff Menkes and members of the Class performed their job duties in Iraq and/or Afghanistan because of the Wartime Exclusions.

79.   Defendants intended that Plaintiff Menkes and members of the Class would rely upon Defendants' representations and/or it is likely that Defendants' omissions would mislead a reasonable consumer/employee acting reasonably under the circumstances.

80.   Defendants knew or should have known that the Suppl. AD&Ds would not provide AD&D coverage to Plaintiff Menkes and members of the Class. Despite this knowledge, Defendants nevertheless displayed, gave, offered and entered into Prudential Suppl. AD&Ds to and with Plaintiff Menkes and members of the Class, thereby rendering Defendants' conduct unconscionable.

81.   Defendants intended that Plaintiff Menkes and members of the Class and/or Claimant Subclass would rely upon the Suppl. AD&Ds and Defendants' representations that the Suppl. AD&Ds were a package of benefits that Plaintiff Menkes

and members of the Class and/or Claimant Subclass could pay for so as to secure benefits while performing their duties on United States military bases in Iraq and/or Afghanistan.

82.   Defendants warranted and held out the Suppl. AD&Ds as providing AD&D insurance coverage for the time period that Plaintiff Menkes and members of the Class were performing their duties in Iraq and/or Afghanistan.

83.   Defendant Prudential displayed, gave, offered and/or entered into Suppl. AD&Ds with Plaintiff Menkes and members of the Class.

84.   Defendant Prudential supplied terms and conditions in the Suppl. AD&Ds to the other Defendants, who then also displayed, gave and/or offered them to Plaintiff Menkes and members of the Class.

85.   Defendants deliberately concealed material facts regarding the Suppl. AD&Ds, including but not limited to, upon information and belief: (1) the Suppl. AD&Ds did not provide AD&D benefits in the event Plaintiffs and members of the Class were killed and/or dismembered in Iraq and/or Afghanistan; and (2) Defendant Prudential would deny the AD&D insurance claims of survivors and/or estates of Plaintiff Menkes and members of the Class based upon the war exclusion in the Suppl. AD&Ds.

86.   Defendants at all times had a duty to disclose that material information to Plaintiff Menkes and members of the Class.

87.   Defendants knew that they were selling the Suppl. AD&Ds to employees of DOD contractors who would be performing their duties pursuant to such contracts at U.S. military bases in Iraq and/or Afghanistan.

88. Even though Defendants knew that the sale of the Suppl. AD&Ds to Plaintiff Menkes and the members of the Class at the premiums and under the terms set forth would harm them because they would not provided adequate coverage, Defendants disregarded this inevitable harm to such consumers, and deliberately and continually sold and marketed the Suppl. AD&Ds.

89. Plaintiff Menkes and members of the Class reasonably expected that the Suppl. AD&Ds would provide adequate AD&D insurance coverage to cover them if they were killed and/or dismembered during the time period they were performing work at U.S. military bases in Iraq and/or Afghanistan.

90. If Defendants had not misrepresented and concealed material information relating to the true nature of the AD&D insurance coverage provided by the Suppl. AD&Ds, Plaintiffs and members of the Class would not have purchased the Suppl. AD&Ds on the terms and premiums offered, if at all.

91. Defendants concealed the true AD&D insurance coverage provided by the Suppl. AD&Ds and induced Plaintiff Menkes and members of the Class and/or Claimant Subclass into agreeing to the Suppl. AD&Ds with the specific and deliberate intention of reaping excessive profits as the direct expense of Plaintiff Menkes and members of the Class and/or Claimant Subclass.

92. By concealing the true lack of AD&D insurance coverage provided by the Suppl. AD&Ds, Defendants reaped tremendous profits all to the detriment of Plaintiff Menkes and members of the Class.

93.   In breach of its duty to properly disclose the above referenced facts, Defendants failed to notify Plaintiff Menkes and members of the Class that the Suppl. AD&Ds' lack of AD&D insurance coverage resulted in employees' death and/or dismemberment in Iraq and/or Afghanistan not being covered and paid for by the AD&D insurance coverage Defendants were required to provide.

94.   Despite knowing that the Suppl. AD&Ds did not provide AD&D insurance coverage that would apply to the acts and work performed by Plaintiff Menkes and members of the Class in Iraq and/or Afghanistan, Defendants intentionally and willfully failed to disclose such information to the Plaintiff Menkes and members of the Class, marketed the Suppl. AD&Ds with knowledge that the AD&D insurance coverage provided by them was false and misleading, and thereby, sold the Plaintiffs and members of the Class Suppl. AD&Ds with a diminished or no value.

### Individual Factual Allegations

### Plaintiff Alexander L. Menkes

95.   Plaintiff Menkes was in the United States Air Force from April 1986 to October 2011, when he retired from the United States Army Reserves at the rank of Major.

96.   On or about November 28, 2008, Defendant Westar, acting on its own and as agent for Defendants QinetiQ LLC and/or QinetiQ NA, offered Plaintiff a position as a Aviation Physicians Assistant/Flight Surgeon for Westar at the U.S. airbase in Kirkuk, Iraq pursuant to a contract Defendants Westar, QinetiQ LLC and/or QinetiQ NA had with VSE Corporation, which was fulfilling a contract with the DOD.

97. The letter containing the offer to Plaintiff Menkes also indicated that a package of benefits would be provided and/or offered to him.

98. As a result of the offer and/or the representations made therein, on December 1, 2008, Plaintiff Menkes accepted the offer.

99. As part of Plaintiff Menkes' position and the offer, QinetiQ LLC and/or QinetiQ NA offered him a benefits package, which was to provide various different benefits to him for the duration of his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA while at the U.S. air base in Kirkuk, Iraq.

100. On or about December 16, 2008, Plaintiff Menkes applied to Prudential for these benefits provided to employees of Westar, QinetiQ LLC and/or QinetiQ NA.

101. As part of his benefits package, Plaintiff Menkes was provided "Basic Long Term Disability", which was paid by Defendants Westar, QinetiQ LLC and/or QinetiQ NA (and which is not a part of this action), and was offered and provided "Buy-Up Long Term Disability" ("Buy-Up LTD"), for which he paid a monthly premium of $10.35.

102. The monthly premium for the Buy-Up LTD was automatically deducted from Plaintiff Menkes' pay during his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA.

103. As part of his benefits package, Plaintiff Menkes was provided "Basic Life and Accidental Death & Dismemberment Insurance", which was paid by Defendants Westar, QinetiQ LLC and/or QinetiQ NA (and which is not a part of this action), and was

offered and provided "Supplemental Term Life Insurance", for which he paid a monthly premium of $16.23.

104. The monthly premium for the Suppl. LIP was automatically deducted from Plaintiff Menkes' pay during his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA.

105. As part of his benefits package, Plaintiff Menkes was provided "Basic Life and Accidental Death & Dismemberment Insurance", which was paid by Defendants Westar, QinetiQ LLC and/or QinetiQ NA (and which is not a part of this action), and was offered and provided "Supplemental Accidental Death & Dismemberment Insurance" policies ("Suppl. AD&D"), for which he paid a monthly premium of $6.92.

106. The monthly premium for the Suppl. AD&D was automatically deducted from Plaintiff Menkes' pay during his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA.

107. On or about July 7, 2009, Plaintiff Menkes was unable to continue working due to, *inter alia*, a lumbar back injury, a positive test for exposure to tuberculosis that required long-term antibiotic therapy, and post-traumatic stress disorder manifesting in symptoms, including but not limited to, insomnia, stress and nightmares he suffered as a result of exposure to rocket attacks, mortars and gunfire from January 2009 through July 2009.

108. Shortly before July 14, 2009, Plaintiff Menkes filed a claim for disability benefits with Prudential under the policies issued to him in connection with his employment with Westar, QinetiQ LLC and/or QinetiQ NA.

109. On July 31, 2009, Prudential denied Plaintiff Menkes' claim for disability purportedly based upon Prudential's determination that his injuries were due to an "occupational sickness."

110. After further information was provided to Prudential, on October 22, 2009, Prudential again denied Plaintiff Menkes' claim because, *inter alia*, of the "contractual provision of the war exclusion."

### **Plaintiff Stephen J. Wolfe**

111. Plaintiff Wolfe was in the U.S. Marines from August 22, 1975 to August 22, 1995 when he was honorably discharged at the rank of Gunnery Sergeant. Plaintiff Wolfe then joined the U.S. Civil Air Patrol as a Search and Rescue Pilot in December of 1996 and is presently still serving as a Major.

112. On or about December of 2007, Defendant Westar, acting on its own and as agent for Defendants QinetiQ LLC and/or QinetiQ NA, offered Plaintiff Wolfe a position as an Academic Instructor for Westar at the U.S. airbase in Kirkuk, Iraq pursuant to a contract Defendants Westar, QinetiQ LLC and/or QinetiQ NA had with VSE Corporation, which was fulfilling a contract with the DOD.

113. On or about March 3, 2008, Defendant Westar, acting on its own and as agent for Defendants QinetiQ LLC and/or QinetiQ NA, offered Plaintiff Wolfe a position as an Academic Instructor for Westar at the U.S. airbase in Kirkuk, Iraq pursuant to a contract Defendants Westar, QinetiQ LLC and/or QinetiQ NA had with VSE Corporation, which was fulfilling a contract with the DOD.

114. The letter containing the offer to Plaintiff Wolfe also indicated that a package of benefits would be provided and/or offered to him.

115. As a result of the offer and/or the representations made therein, on March 17, 2008, Plaintiff Wolfe accepted the offer.

116. As part of Plaintiff Wolfe's position and the offer, QinetiQ LLC and/or QinetiQ NA offered him a benefits package, which was to provide various different benefits to him for the duration of his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA while at the U.S. air base in Kirkuk, Iraq.

117. On or about November 21, 2008, Plaintiff Wolfe applied to Prudential for these benefits provided to employees of Westar, QinetiQ LLC and/or QinetiQ NA.

118. As part of his benefits package, Plaintiff Wolfe was provided "Basic Long Term Disability", which was paid by Defendants Westar, QinetiQ LLC and/or QinetiQ NA (and which is not a part of this action), and was offered and provided "Buy-Up Long Term Disability" ("Buy-Up LTD"), for which he paid a monthly premium of $5.69.

119. The monthly premium for the Buy-Up LTD was automatically deducted from Plaintiff Wolfe's pay during his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA.

120. As part of his benefits package, Plaintiff Wolfe was provided "Basic Life and Accidental Death & Dismemberment Insurance", which was paid by Defendants Westar, QinetiQ LLC and/or QinetiQ NA (and which is not a part of this action), and was offered and provided "Supplemental Term Life Insurance", for which he paid a monthly premium of $22.53.

121. The monthly premium for the Suppl. LIP was automatically deducted from Plaintiff Wolfe's pay during his employment by Defendants Westar, QinetiQ LLC and/or QinetiQ NA.

### NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE NATIONWIDE CLASS

122. New Jersey's substantive laws apply to the proposed nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.  A United States District Court sitting in diversity presumptively applies the substantive law of the State in which it sits.

123. New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the nationwide Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

124. Prudential's headquarters and principal place of business are located in Newark, New Jersey.

125. The Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds of Plaintiffs and members of the Class were issued by Prudential and its Newark headquarters.

126. Prudential owns property and conduct substantial business in New Jersey.

127. The revenues Prudential generated from sales of insurance policies to Plaintiffs and members of the Class were received by Defendants in New Jersey.

128. Given the fact that Prudential is headquartered in New Jersey, it will not suffer any hardship or surprise due to the application of New Jersey law in this case.

129. While each of the various jurisdictions from which Class members will be drawn will have an equal interest in compensating their citizens, only New Jersey has the additional interest of regulating a corporation which is headquartered and committed the acts in question within its borders.

130. New Jersey thus has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all Class members. New Jersey also has a materially greater interest than any other State in enforcing its laws with respect to the conduct of corporations, like Prudential, located in and doing business principally in New Jersey. The application of New Jersey law to the conduct of corporations based in New Jersey furthers strong fundamental public policies of the State of New Jersey.

131. Alternatively and/or additionally, the Court may apply the substantive law of the State where Plaintiffs reside and/or purchased Prudential's Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

## CLASS ACTION ALLEGATIONS

132. This action is brought and may properly be maintained as a class action pursuant Rule 23(a) and Rule 23(b)(1), (2) and/or (3) of the Federal Rules of Civil Procedure. Plaintiffs brings this action on behalf of themselves and all members of the following class (the "Class"):

> All employees of DOD contractors who performed their work in Iraq and/or Afghanistan from February 10, 2006 to the present (or a date to be determined after discovery) who were issued Prudential Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds, with an exclusion from coverage for

"disability due to war, declared or undeclared, or any act of war" or substantially similar language (the "War Exclusion").

Excluded from both the Class are all Defendants, each of their parents, subsidiaries, authorized distributors and affiliates, and their legal representatives, heirs, successors, and assigns of any excluded person.

133. Plaintiff Menkes also brings this action on behalf of himself and all members of the following Claimant Subclass, which is subsumed within and/or a part of the Class:

> All Class members for whom Prudential denied coverage benefits based upon the War Exclusions in Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

(hereinafter the "Claimant Subclass").

134. The Class and Claimant Subclass are so numerous that joinder of all Class and/or Claimant Subclass members is impracticable. Plaintiffs believe that there are at least thousands of members of the Class and/or Claimant Subclass. Although the exact number and identities of individual Class and/or Claimant Subclass members are presently unknown, the number of Class and Claimant Subclass members can easily be ascertained from Defendants' records and other appropriate discovery.

135. There are questions of fact and law which are common to the Class and/or Claimant Subclass that predominate over any questions affecting only individual Class members. Among the common questions of law and fact are the following:

> a. Whether Prudential had a policy and/or practice of selling Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds with War Exclusions to

employees of DOD contractors' employees who were stationed overseas in Iraq and/or Afghanistan.

b. Whether Prudential had a policy and/or practice of considering all injuries, death and/or dismemberments sustained in Iraq and/or Afghanistan to be excluded from insurance coverage based upon the War Exclusions in the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

c. Whether Defendants' misconduct was consumer oriented;

d. Whether Defendants' actions have violated the New Jersey Consumer Fraud Act;

e. Whether Defendants' actions have violated the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

f. Whether Defendants created, planned and implemented the terms and conditions of their Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds in the State of New Jersey;

g. Whether Defendants' misconduct violated federal and/or state laws;

h. Whether Class and/or Claimant Subclass members suffered an ascertainable loss as a result of the Defendants' misrepresentations and/or omissions;

i. Whether as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class and/or Claimant Subclass members are entitled to

restitution, injunctive and/or monetary relief, and, if so, the amount and nature of such relief.

136. Plaintiffs' claims are typical of the claims of the other members of the Class and the Claimant Subclass, inasmuch as all such claims arise out of Defendants' standard policy and practices relating to the same illegal and fraudulent practices of Defendants, and Defendants have acted in the same way toward the Plaintiffs and the Class members. Plaintiffs have no interests antagonistic to the interests of the other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class action and consumer litigation. Accordingly, Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of the Class and Claimant Subclass.

137. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of (1) inconsistent or varying adjudications with respect to individual members of the Class and Claimant Subclass which would establish incompatible standards of conduct for the Defendants or (2) adjudications with respect to such individual members of the Class and Claimant Subclass, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

138. Class certification is further appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and/or Claimant Subclass, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the Class and/or Claimant Subclass as a whole. All Class and Claimant Subclass members pray for temporary and permanent injunctive relief, declaratory relief, including but not limited to, a declaration that the War Exclusion is invalid and unenforceable.

139. Class certification is further appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy inasmuch as common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue enormous savings to both the Courts and the Class in litigating the common issues on a class-wide instead of on a repetitive individual basis and inasmuch as no unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

140. Plaintiffs and members of the Class and Claimant Subclass pray for monetary and/or statutory damages. The damages suffered by each individual Class member may be disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendants' conduct and practices. Additionally, effective redress for each and every Class and/or Claimant Subclass member against Defendants may be limited or even impossible where serial, duplicate, or concurrent litigation occurs arising from these disputes. Even if individual Class members could afford or justify the prosecution of their separate claims, such an approach would compound judicial inefficiencies, and could lead to incongruous and

conflicting judgments against Defendants. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, because: (i) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there will be efficiencies to the courts and the parties in litigating the common issues on a class basis rather than on an individual basis; (ii) the damages to some members of the Class and/or Claimant Subclass are larger than to others, but all claims are sufficiently small that individual prosecution of the claim would not be an economically viable alternative; (iii) class treatment is desired for optimal deterrence and compensation; (iv) the economies of scale inherent in litigating similar claims on a common basis will enable this case to be litigated on a cost-efficient basis as a class action, especially when compared to repetitive individual actions; (v) no unusual difficulties are likely to be encountered in the management of this class action as the proofs as to liability are common to all Class members; and (vi) this action would be effectively impossible to bring as individual actions leaving Plaintiffs and others similarly situated with no viable remedy.

141. This litigation presents statutory violations and violations of consumer fraud acts and practices claims of the types that have often been prosecuted on a class-wide basis.

142. This lawsuit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class predominate over the questions affecting only individual members of the Class, and a

class action is superior to other available means for the fair and efficient adjudication of this dispute.

## **FIRST COUNT**

### **VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN. §§ 56:8-1 *et seq.***

143. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

144. The New Jersey Consumer Fraud Act ("CFA") provides in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale * * * or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. N.J.S.A. 56:8-2

145. This Count is asserted on behalf of the nationwide Class and Claimant Subclass under New Jersey law.

146. Defendant Prudential has its corporate headquarters and its principal place of business in New Jersey.

147. Defendants' scheme to sell insurance policies to employees of DOD contractors stationed in Iraq and/or Afghanistan, upon information and belief, originated and/or implemented, in substantial part, from New Jersey.

148. Plaintiffs and members of the Class members are "persons" entitled to seek the protection under the CFA. N.J.S.A. 56:8-1, *et seq.*

149. Defendants' deceptive marketing and advertising campaign in connection with the sale of the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds are "advertisements" as contemplated by the CFA.

150. The Defendants are sellers of "merchandise" as contemplated by the CFA.

151. The deceptive acts and practices of Defendants, as set forth herein, have directly, foreseeably, and proximately caused ascertainable damages and injury to Plaintiffs and members of the Class in amounts yet to be determined because 1) employees' disabilities suffered in Iraq and/or Afghanistan not being covered and paid for by the insurance coverage Defendants were required to provide; 2) employees paid premiums for disability insurance that was of negligible or no value to them; 3) employees had to secure additional and/or alternative medical coverage and/or pay for medical treatment and evaluations that should have been covered by the Buy-Up LTDs; and/or 4) employees lost income and/or incurred expenses that should have been covered by the Buy-Up LTDs.

152. The deceptive acts and practices of Defendants, as set forth herein, have directly, foreseeably, and proximately caused ascertainable damages and injury to Plaintiffs and members of the Class in amounts yet to be determined because 1) employees' deaths suffered in Iraq and/or Afghanistan not being covered and paid for by the insurance coverage Defendants were required to provide; and/or 2) employees paid premiums for Suppl. LIP insurance that was of negligible or no value to them.

153. The deceptive acts and practices of Defendants, as set forth herein, have directly, foreseeably, and proximately caused ascertainable damages and injury to

Plaintiffs and members of the Class in amounts yet to be determined because 1) employees' deaths and/or dismemberment suffered in Iraq and/or Afghanistan not being covered and paid for by the insurance coverage Defendants were required to provide; and/or 2) employees paid premiums for Suppl. AD&D insurance that was of negligible or no value to them.

154. The actions of Defendants constitute acts, uses, or employment by Defendants of unconscionable commercial practices, misrepresentations, or the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, by Defendants in violation of the CFA. Defendants have caused economic loss and harm to Plaintiffs and members of the Class and/or Claimant Subclass as a result of the deceptive and misleading manner in which they acted.

155. As alleged with specificity in this Complaint, Defendants, through deceptive marketing and advertising campaign, made material misrepresentations regarding Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds they produced and sold to Plaintiffs and members of the Class, to induce them into purchasing the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

156. Defendants engaged in a purposeful concealment, suppression and omissions of material facts pertaining to the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds, with intent that Plaintiffs and members of the Class rely upon such concealment, suppression or omission, in connection with the sale and advertisement of

continued sales of the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds to unwitting employees who are members of the Class.

157. Along with others known and unknown, the Defendants intentionally engaged in these deceptive acts and practices.

158. Upon information and belief, Defendants and its agents participated in the deceptive practices alleged in this Complaint by overseeing, directing and otherwise ratifying the improper provision of disability benefits, in order to obtain financial benefits for itself.

159. As a result of Defendants' deceptive advertising and marketing campaign, Plaintiffs and members of the Class were induced to purchase the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

160. The price paid for the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds, and/or the loss of income that was not reimbursed by Prudential constitute readily ascertainable losses.

161. The price paid for the Suppl. LIPs, and/or the the loss of death benefits that were not paid by Prudential constitute readily ascertainable losses.

162. As a result of the Defendants' conduct alleged herein, Plaintiffs and members of the Class and Claimant Subclass have suffered ascertainable losses and have been harmed and damaged.

**SECOND COUNT**

**TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT,**
**N.J. STAT. ANN. §§ 56:12-13, et seq.**

163. Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

164. This Count is asserted on behalf of the nationwide Claimant Subclass under New Jersey law.

165. Defendants gave, displayed, offered and/or entered into contracts, namely the LTDs containing the War Exclusions, which, if effective, violated the clearly established legal rights of Plaintiffs and the members of the Class and/or Claimant Subclass.

166. As a result of the aforesaid violations, Defendants have violated the New Jersey Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56: 12-13, *et seq.*

167. As a result of Defendants violations, Plaintiffs and the members of the Class and Claimant Subclass are aggrieved consumers and have been damaged.

168. Pursuant to N.J.S.A. §§ 56:12-17, Defendants are liable to Plaintiffs and each member of the Class for both a minimum statutory penalty of $100.00, as well as any actual damages, together with attorneys' fees and costs.

**THIRD COUNT**

**BREACH OF CONTRACT AND THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

169. Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

170. This Count is asserted on behalf of the nationwide Class under New Jersey law.

171. The Defendants and Plaintiffs entered into contracts through the Defendants Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

172. The terms and conditions of the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds include express written provisions, but also terms and conditions, which although not formally expressed, are implied by law. Such implied terms are as binding as the terms that are actually written into the agreement.

173. Inherent in all contracts and agreements is an implied covenant that the parties will act in good faith and deal fairly with each other in the performance of their respective covenants and obligations under the contract and will not take any action that will injure the other party or compromise his benefit of the contract.

174. Defendants' obligations to abide by the implied covenant of good faith and fair dealing are/were heightened by the substantial imbalance of power between the Defendants and the consumer Plaintiffs and members of the Class and/or Claimant Subclass. This imbalance allowed Defendants to include illegal policy provisions, such as the War Exclusions, and to engage in the scheme described in detail in this Complaint.

175. Plaintiffs and members of the Class purchased the coverage Defendants represented was provided by the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

176. By purchasing an Buy-Up LTD, Suppl. LIP and/or Suppl. AD&D issued by Defendant Prudential, Plaintiffs and members of the Class had reasonable expectations to receive the benefits of the policies purchased as represented by the Defendants.

177. Defendants have denied Plaintiffs and members of the Class the ability to achieve their reasonable expectations in purchasing a Buy-Up LTD, Suppl. LIP and/or Suppl. AD&D by the Defendant Prudential.

178. Defendants have breached the implied covenant of good faith and fair dealing by virtue of the deceptive practices described herein and by other acts described herein independent of the deceptive practices.

179. Defendants' breach of the implied covenant of good faith and fair dealing was a substantive factor causing Plaintiffs and members of the Class damage.

180. Defendants breached the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds contracts by virtue of the deceptive practices described herein and by other acts described herein independent of the deceptive practices.

181. As a result of all the breaches set forth herein, Plaintiffs and members of the Class were caused damages.

## FOURTH COUNT

## INTENTIONAL/NEGLIGENT MISREPRESENTATION AND/OR OMISSION

182. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

183. This Count is brought on behalf of the nationwide Class and Claimant Subclass under New Jersey law.

184. At all times herein referred to, Defendants were engaged in the business of drafting, designing, marketing, distributing, or selling Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds which are the subject of the present litigation.

185. Defendant Prudential, acting through its officers, agents, servants, representatives, or employees, provided Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds to contractors and/or subcontractors which had contracts with the DOD to provide personnel and services on U.S. bases in Iraq and/or Afghanistan.

186. Defendants willfully, falsely, and knowingly misrepresented material facts relating to the coverage and value of the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds. These misrepresentations were contained in the brochures, policy pamphlets and other written material disseminated or caused to be disseminated by Defendant Prudential, and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants, or employees of Prudential, acting within the line and scope of their authority, so employed by Prudential to merchandise and market the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

187. Defendants' representations were made with the intent that the general public, including Plaintiffs and Class and/or Claimant Subclass, rely upon them. Defendants' representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

188. In actual and/or reasonable reliance upon Defendants' misrepresentations, Plaintiffs and Class members entered into the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds for their intended and reasonably foreseeable purposes – to provide insurance coverage. Plaintiffs and Class members were unaware of the existence of facts that Defendants suppressed and failed to disclose. If they had been aware of the suppressed

facts, Plaintiffs and Class members would not have purchased Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

189. Plaintiffs and Class members are informed and believe, and thereon allege, that Defendants misrepresented material facts with the intent to defraud Plaintiffs and Class members. Plaintiffs and Class members were unaware of the intent of Defendants and relied upon the representations of Defendants in agreeing to pay for the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds.

190. Plaintiffs' and Class members' reliance on the representations of Defendants was reasonable.

191. In actual and/or reasonable reliance upon Defendants' misrepresentations, Plaintiffs and Class members purchased Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds and members of the Claimant Subclass were actually denied coverage by Defendant Prudential after making claims, the direct and proximate result of which was injury and harm to the Plaintiffs and Class members because: (a) they would not have purchased the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds at all or on the same terms and premiums if the true facts concerning their coverage had been known; and (b) they paid premiums due to the misrepresentation that the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds coverage would be provided to them.

## FIFTH COUNT

### PUNITIVE DAMAGES,
### N.J.S.A. 2A:15-5.9, *et seq.*

192. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

193. This Count is brought on behalf of the nationwide Class and/or Claimant Subclass under New Jersey law.

194. The damage and harms suffered by Plaintiffs and members of the Class and/or Claimant Subclass as a direct result of Defendants' fraudulent, deceptive and misleading conduct were actuated by actual malice and/or accompanies by a wanton and willful disregard of Plaintiffs and members of the Class and/or Claimant Subclass who Defendants knew would be harmed by Defendants' acts and/or omissions.

195. At the relevant time, Defendants knew that serious harm would be inflicted upon Plaintiffs and members of the Class and/or Claimant Subclass as a direct result of Defendants' conduct as alleged herein.

196. At the relevant time, Defendants disregarded the inevitable damage and harm Plaintiffs and members of the Class and Claimant Subclass would suffer, and went ahead and sold and marketed the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds in the fraudulent and/or misleading manner alleged herein and fraudulent induced Plaintiffs and Class and/or Claimant Subclass to enter into the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds with the War Exclusions.

197. To date, Defendant Prudential has failed to reveal their misconduct and fraudulent actions as alleged herein and continue to conceal it from Plaintiffs, members of the Class and the general public.

198. As a result of Defendant's misconduct and actions alleged herein, Defendant has reaped excessive profits.

199. Upon information and belief, Defendant is a multi-billion dollar multinational insurance company whose financial conditions would support punitive damages commensurate with their multibillion dollars in assets and net worth.

## **SIXTH COUNT**

## **ALTERNATIVELY, FOR VIOLATION OF THECONSUMER FRAUD LAWS OF THE VARIOUS STATES**

200. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

201. This Count is brought in the alternative on behalf of the nationwide Class and/or Subclasses.

202. Defendants have engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

203. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, *et seq.*

204. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, *et seq.*

205. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq.*

206. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, *et seq.*

207. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200, *et seq.*

208. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, *et seq.*

209. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq.*

210. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

211. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq.*

212. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, *et seq.*

213. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq.*

214. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, *et seq.*

215. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

216. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1, *et seq.*

217. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, *et seq.*

218. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE §714.16, *et seq.*

219. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, *et seq.*

220. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, *et seq.*

221. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, *et seq.*

222. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

223. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

224. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, *et seq.*

225. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, *et seq.*

226. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

227. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, *et seq.*

228. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, *et seq.*

229. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, *et seq.*

230. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

231. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. 598.0903, *et seq.*

232. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

233. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

234. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq.*

235. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. 56:8-1, *et seq.*

236. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

237. Defendants have engaged in unfair competition or unfair or deceptive acts or practices In violation of N.D. CENT. CODE § 51-15-01, *et seq.*

238. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

239. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*

240. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, *et seq.*

241. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

242. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, *et seq.*

243. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

244. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

245. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

246. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, *et seq.*

247. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

248. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

249. Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

250. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, *et seq.*

251. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

252. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq.*

253. The acts, practices, misrepresentations and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions, and Defendants violated each of these statutes by representing the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds would provide insurance benefits and would cover the Plaintiffs and members of the Class and/or Claimant Subclass during the time they performed work on U.S. bases in Iraq and/or Afghanistan.

254. Plaintiffs and Class and/or Claimant Subclass members were injuries, died and/or dismembered as a direct and proximate result of Defendants' unfair, deceptive and/or unconscionable acts and practices, because: (a) they would not have purchased the Buy-Up LTDs, Suppl. LIPs and/or Suppl. AD&Ds at all or on the same terms or premiums if the true facts concerning their coverage had been known; and (b) they paid

premiums due to the misrepresentation that insurance coverage would be provided to them.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint shall be mailed to the Attorney General of the State of New Jersey within ten days after the filing of this Complaint with the Court pursuant to N.J.S.A. 56:8-20.

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants for the following relief:

(a)  An Order certifying the proposed Class and/or Claimant Subclass herein and appointing Plaintiffs and the undersigned counsel of record to represent the Class and/or Claimant Subclass;

(b)  An Order declaring the Defendants' conduct violates the statutes referenced herein;

(c)  An Order declaring that the any settlements and/or releases as to the Claimant Subclass are invalid and void *ab initio*;

(d)  An Order finding in favor of Plaintiffs, the nationwide Class and/or Claimant Subclass, on all counts asserted herein;

(e)  An Order awarding Plaintiffs, members of the Class and/or Claimant Subclass compensatory, consequential, and statutory damages and further awarding treble damages pursuant to the CFA claim and further awarding punitive and/or exemplary damages on all other counts asserted herein according to law;

(f)  An Order awarding prejudgment interest on all amounts awarded;

(g)  An Order of restitution and all other forms of equitable monetary relief;

(h)  An Order for injunctive relief as pleaded or as the Court may deem just and proper;

(i)    An Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses, enhancements and costs of suit; and

(j)    An Order granting such other relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues in this action.

Dated: May 14, 2012

  s/ Andrew P. Bell           
Michael A. Galpern
Andrew P. Bell
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Ste 500
Cherry Hill, NJ 08002
(856) 663-8200
  - and –
747 Third Avenue, 37th Floor
New York, NY 10017
(212) 838-3333
www.lockslaw.com

Attorneys for Plaintiffs and the Class

**Exhibit A**

# QinetiQ North America

*Non-union Employees
earning less than
$120,000 per year*

**Long Term Disability Coverage**

 Prudential

# Disclosure Notice

## FOR ARKANSAS RESIDENTS

Prudential's Customer Service Office:

> The Prudential Insurance Company of America
> Disability Management Services Claim Division
> P.O. Box 13480
> Philadelphia, Pennsylvania 19176
> 1-800-842-1718

If Prudential fails to provide you with reasonable and adequate service, you may contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
501-371-2749

## FOR ARIZONA RESIDENTS

**Notice: This certificate of insurance may not provide all benefits and protections provided by law in Arizona. Please read this certificate carefully.**

## FOR FLORIDA RESIDENTS

The benefits of the policy providing your coverage are governed by the law of a state other than Florida.

## FOR INDIANA RESIDENTS

**Questions regarding your policy or coverage should be directed to:**

> **The Prudential Insurance Company of America**
> **(800) 842-1718**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or e-mail:

> State of Indiana Department of Insurance
> Consumer Services Division
> 311 West Washington Street, Suite 300
> Indianapolis, Indiana 46204
>
> Consumer Hotline: (800) 622-4461; (317) 232-2395
>
> Complaints can be filed electronically at www.in.gov/idoi.

## FOR MARYLAND RESIDENTS

**The Group Insurance Contract providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.**

## FOR OKLAHOMA RESIDENTS

**Notice: Certificates issued for delivery in Oklahoma are governed by the certificate and Oklahoma laws not the state where the master policy was issued.**

## FOR VERMONT RESIDENTS

**The coverage provided in this certificate is not subject to regulation by the State of Vermont.**

# THIS NOTICE IS FOR TEXAS RESIDENTS ONLY

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

Email: ConsumerProtection@tdi.state.tx.us

## AVISO IMPORTANTE

Para obtener información o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

Email: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact Prudential first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con Prudential primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## UNA ESTE AVISO A SU POLIZA:

Este aviso es sólo para propósito de información y no se convierte en parte o condición del documento adjunto.

# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | January 1, 2009 |
| **Contract Holder:** | QINETIQ NORTH AMERICA |
| **Group Contract Number:** | G-44819-VA |
| **Covered Classes:** | All Non-union Employees earning less than $120,000 per year who are classified by the Contract Holder as belonging to one of the following classes: QNAO, QNAO Exec, Non Union MSG, SEG Tier 1, SEG Tier 2, SEG Tier 3, SEG Apogen, SEG ITS Corp, SEG International, Non Union TSG, PSI. |
| **Minimum Hours Requirement:** | Employees must be working at least 32 hours per week. |
| **Employment Waiting Period:** | You may need to work for your Employer for a continuous period before you become eligible for the plan. The period must be agreed upon by your Employer and Prudential.<br><br>Your Employer will let you know about this waiting period. |
| **Elimination Period:** | 90 days.<br><br>**Benefits begin the day after the Elimination Period is completed.** |
| **Monthly Benefit:** | Your monthly benefit depends on the Option for which you are enrolled. You are automatically enrolled for Option 1 unless you choose to enroll for Option 2.<br><br>Option 1: 60% of your monthly earnings, but not more than the Maximum Monthly Benefit.<br><br>Option 2: 70% of your monthly earnings, but not more than the Maximum Monthly Benefit.<br><br>Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may be limited under this coverage. |

| **Maximum Monthly Benefit:** | Your maximum monthly benefit depends on the Option for which you are enrolled. You are automatically enrolled for Option 1 unless you choose to enroll for Option 2.

Option 1: $10,000.00.

Option 2: $15,000.00. |

**Maximum Period of Benefits:**

| **Your Age on Date Disability Begins** | **Your Maximum Benefit Duration** |
| --- | --- |
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

No contributions are required for your coverage while you are receiving payments under this plan.

| **Cost of Coverage:** | Your cost of coverage depends on the Option for which you are enrolled. You are automatically enrolled for Option 1 unless you choose to enroll for Option 2.

Option 1: The long term disability plan is provided to you on a non-contributory basis. The entire cost of your coverage under the plan is being paid by your Employer.

Option 2: The long term disability plan is provided to you on a contributory basis. You will be informed of the amount of your contribution when you enroll. |

**The above items are only highlights of your coverage. For a full description please read this entire Group Insurance Certificate.**

**IMPORTANT INFORMATION FOR RESIDENTS OF CERTAIN STATES:** There are state-specific requirements that may change the provisions under the coverage(s) described in this Group Insurance Certificate. If you live in a state that has such requirements, those requirements will apply to your coverage(s) and are made a part of your Group Insurance Certificate. Prudential has a website that describes these state-specific requirements. You may access the website at www.prudential.com/etonline. When you access the website, you will be asked to enter your state of residence and your Access Code. **Your Access Code is 44819.**

If you are unable to access this website, want to receive a printed copy of these requirements or have any questions, call Prudential at 1-866-439-9026.

83500
CBH-LTD-1013

(44819-74)

# Table of Contents

BENEFIT HIGHLIGHTS - LONG TERM DISABILITY PLAN ............................................................... 1

CERTIFICATE OF COVERAGE ................................................................................................. 4

GENERAL PROVISIONS........................................................................................................... 5

LONG TERM DISABILITY COVERAGE - BENEFIT INFORMATION ................................................ 10

LONG TERM DISABILITY COVERAGE – OTHER BENEFIT FEATURES ........................................ 23

LONG TERM DISABILITY COVERAGE – OTHER SERVICES ........................................................ 24

LONG TERM DISABILITY COVERAGE – REHABILITATION SERVICES ........................................ 25

LONG TERM DISABILITY COVERAGE - CLAIM INFORMATION .................................................... 29

GLOSSARY............................................................................................................................ 32

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

## Prudential's Address

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey 07102

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;

- to whom Prudential will make a payment; and

- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in *active employment* with the *Employer* for the minimum hours requirement.

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 32 hours per week. If you are a partner or proprietor of the Employer, that work must be in the conduct of the Employer's business.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Employer* means the *Contract Holder*, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

*Contract Holder* means the Employer to whom the Group Contract is issued.

*Insured* means any person covered under a coverage.

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a **covered class**, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the day after you complete your **employment waiting period**.

You do not have to complete a new employment waiting period if:

- your insurance ends because you stop working for your Employer for any reason; and

- you resume working for your Employer in a covered class within 6 months after your insurance ended.

**Covered class** means your class as determined by the Contract Holder. This will be done under the Contract Holder's rules, on dates the Contract Holder sets. The Contract Holder must not discriminate among persons in like situations. You cannot belong to more than one class for insurance on each basis, Contributory or Non-contributory Insurance, under a plan. "Class" means covered class, benefit class or anything related to work, such as position or earnings, which affects the insurance available. If you are an employee of more than one Employer included under the Group Contract, for the insurance you will be considered an employee of only one of those Employers. Your service with the others will be treated as service with that one.

**Employment waiting period** means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan. The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the later of:

- the date you are eligible for coverage; and

- the date you are in active employment. If you are not in active employment on the date your coverage would normally begin, it will begin on the date you return to active employment.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you enroll for it on or before that date;

- the date you enroll for coverage, if you enroll for it within 31 days after the date you are eligible for coverage;

- the date Prudential approves your application, if **evidence of insurability** is required; or

- the date you are in active employment. If you are not in active employment on the date your coverage would normally begin, it will begin on the date you return to active employment.

The Contract Holder may not waive an evidence of insurability requirement for any reason.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.

## When Is Evidence of Insurability Required?

In any of these situations, you must give evidence of insurability, provided at your expense. This requirement will be met when Prudential decides the evidence is satisfactory.

- When you and your Employer share the cost of your coverage under a plan, you enroll for coverage more than 31 days after the date you are eligible for it.

- You re-enroll for coverage after you voluntarily cancelled it.

- You enroll after any coverage ends because you did not pay a required contribution.

- You have not met a previous evidence requirement to become covered under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

## How Do You Enroll For Coverage?

You must enroll on a form approved by Prudential and agree to pay the required contributions.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect on the latest of:

1. the effective date of the change, if you are:

   - in active employment;

   - on a temporary layoff;

   - on leave of absence; or

   - working *reduced hours*, for reasons other than disability.

2. the date Prudential approves your application, if evidence of insurability is required; or

3. the date you return to active employment, if you are not in active employment due to injury or sickness.

An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Reduced hours* means you are working less than the number of hours required to be considered in active employment.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working Or If You Are Working Reduced Hours?

If you are on a *temporary layoff*, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins. But, with respect to leave of absence under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, if it is your employer's policy to allow a longer period of continued coverage for non-FMLA leaves, this policy will be used to determine the period of continued coverage for FMLA leave. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

If you are working reduced hours, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

*Temporary layoff* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

*Leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time or any period of disability is not considered a leave of absence.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

- the last day of the period for which you made any required contributions;

- the last day you are in active employment except as provided under the Once Your Coverage Begins, What Happens If You Are Temporarily Not Working Or If You Are Working Reduced Hours? section; or

- the date you are no longer in active employment due to a disability that is not covered under the plan. The disabilities that are not covered are shown in the What Disabilities Are Not Covered Under Your Plan? section of the Long Term Disability Coverage Benefit Information pages.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

83500
CGP-1014

9

(44819-74)

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

- you are under the **regular care** of a **doctor**; and

- you have a 20% or more loss in your **monthly earnings** due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience; and

- you are under the regular care of a doctor.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and

- doctors, other medical practitioners or vocational experts of our choice.

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so during the pendency of claim. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

83500
CBI-LTD-1162

(44819-74)

***Sickness*** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

***Injury*** means a bodily injury that:

- is the direct result of an accident;

- is not related to any cause other than the accident; and

- results in immediate disability.

Disability must begin while you are covered under the plan.

***Regular care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Doctor*** means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Monthly earnings*** means your gross monthly income from your Employer in effect just prior to your date of disability. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

***Gainful occupation*** means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 60% of your ***indexed monthly earnings***, if you are working; or

- 60% of your monthly earnings, if you are not working.

But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 60% of your indexed monthly earnings, if you are working; or

- 70% of your monthly earnings, if you are not working.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 30 consecutive days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 90 days.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential. If you become covered under a group long term disability plan that replaces this plan during your elimination period, your elimination period under this plan will not be met.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *monthly payment*:

1. If you are enrolled for Option 1, multiply your monthly earnings by 60%. But, if you are enrolled for Option 2, multiply your monthly earnings by 70%.

83500
CBI-LTD-1162

12

(44819-74)

2. If you are enrolled for Option 1, the **maximum monthly benefit** is $10,000.00. But, if you are enrolled for Option 2, the **maximum monthly benefit** is $15,000.00.

3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your **gross disability payment**.

4. Subtract from your gross disability payment any **deductible sources of income**.

That amount figured in item 4 is your monthly payment.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

**Monthly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Maximum monthly benefit** means the maximum benefit amount for which you are insured under this plan.

**Gross disability payment** means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

**Deductible sources of income** means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly **disability earnings**, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.

2. Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.

2. Divide the answer in item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3. Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

During the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Beyond 24 months of disability payments, if your monthly disability earnings exceed 60% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible. This would be, based on your restrictions and limitations:

- During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if:

- During the first 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings; or

- Beyond 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 60% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed the above amounts.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1.  The amount that you receive or are entitled to receive as loss of time benefits under:

    (a)  a workers' compensation law;

    (b)  an occupational disease law; or

    (c)  any other **act** or **law** with similar intent.

2.  The amount that you receive or are entitled to receive as loss of time disability income payments under any:

    (a)  state compulsory benefit **act** or **law**.

    (b)  insurance or a health or welfare plan or other group insurance plan where the Employer, directly or indirectly, has paid all or part of the cost or made payroll deductions.

    (c)  governmental retirement system as the result of your job with your Employer.

3.  The gross amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

    (a)  the United States Social Security Act;

    (b)  the Railroad Retirement Act;

    (c)  the Canada Pension Plan;

    (d)  the Quebec Pension Plan; or

    (e)  any similar **plan** or **act**.

    Amounts paid to your former spouse or to your children living with such spouse will not be included.

4.  The gross amount that you receive as retirement payments or the gross amount your spouse and children receive as retirement payments because you are receiving payments under:

    (a)  the United States Social Security Act;

    (b)  the Railroad Retirement Act;

    (c)  the Canada Pension Plan;

    (d)  the Quebec Pension Plan; or

    (e)  any similar **plan** or **act**.

    Benefits paid to your former spouse or to your children living with such spouse will not be included.

5. The amount that you:

    (a) receive as disability payments under your Employer's **retirement plan**;

    (b) voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

    (c) receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6. The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

7. The amount of loss of time benefits that you receive or are entitled to receive under any **salary continuation or accumulated sick leave** to the extent that your monthly payment and deductible sources of income, including any other group disability benefits, exceed or would exceed 100% of your monthly earnings.

8. The amount that you receive from a partnership, proprietorship or any similar draws.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security retirement payments if your disability begins after age 65 and you were already receiving Social Security retirement payments.

**Law, plan or act** means the original enactment of the law, plan or act and all amendments.

**Retirement plan** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

**Salary continuation or accumulated sick leave** means continued payments to you by your Employer of all or part of your monthly earnings, after you become disabled as defined by the Group Contract. This continued payment must be part of an established plan maintained by your Employer for the benefit of an employee covered under the Group Contract. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account as such, in calculating your monthly payment.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

- 401(k) plans;

- profit sharing plans;

- thrift plans;

- tax sheltered annuities;

- stock ownership plans;

- non-qualified plans of deferred compensation;

- pension plans for partners;

- military pension and disability income plans;

- credit disability insurance;

- franchise disability income plans;

- no-fault motor vehicle insurance;

- a retirement plan from another Employer;

- individual retirement accounts (IRA).

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is $100.00.

Prudential may apply this amount toward an outstanding overpayment.

## What Happens When You Receive a Cost of Living Increase from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment due to a cost of living increase from that source.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1, 2, or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1, 2, or 3 in the deductible sources of income section if you:

83500
CBI-LTD-1162

(44819-74)

- apply for the benefits;

- appeal any denial to all administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

If we determine that you may qualify for benefits under item 7 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been received.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount received; or

- that benefits have been denied. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*. Your maximum period of payment is:

| Your Age on Date Disability Begins | Your Maximum Period of Benefits |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

83500
CBI-LTD-1162

(44819-74)

We will stop sending you payments while you are incarcerated as a result of a conviction.

We will stop sending you payments and your claim will end on the earliest of the following:

1.  During the first 24 months of payments, when you are able to work in your regular occupation on a *part-time basis* but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.

2.  The end of the maximum period of payment.

3.  The date you are no longer disabled under the terms of the plan.

4.  The date you fail to submit proof of continuing disability satisfactory to Prudential.

5.  The date your disability earnings exceed the amount allowable under the plan.

6.  The date you die.

7.  The date you decline to participate in a rehabilitation program that Prudential considers appropriate for your situation and that is approved by an independent doctor.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one period of disability.

**Part-time basis** means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on *self-reported symptoms* have a limited pay period during your lifetime.

Disabilities which, as determined by Prudential, are due in whole or part to *mental illness* also have a limited pay period during your lifetime.

The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1.  If you are *confined* to a *hospital or institution* at the end of the 24 month period, Prudential will continue to send you payments during your *confinement*.

    If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

    If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2.  In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;

- trauma;

- viral infection;

- Alzheimer's disease; or

- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Self-reported symptoms* means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;

- active participation in a riot; or

- commission of a crime for which you have been convicted under state or federal law.

Your plan does not cover a disability due to a pre-existing condition.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if both 1. and 2. are true:

1.  (a)  You received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or

    (b)  you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

2.  Your disability begins within 12 months of the date your coverage under the plan becomes effective.

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase. The increase will not take effect until your disability ends.

## How Do the Pre-Existing Condition Provisions Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

*   you were covered by that plan on the day before this plan became effective; and

*   you became covered under this plan within thirty-one days of its effective date.

The special rules are:

1.  If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2.  If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

3.  If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change. This applies whether or not the Employer's prior plan had a pre-existing condition exclusion or limitation.

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a *recurrent disability*, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under this plan for the period between your prior claim and your current disability; and

- your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim.  Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim.  The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

*Recurrent disability* means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

83500
CBI-LTD-1162

(44819-74)

# Long Term Disability Coverage

## OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die?
### (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your *eligible survivor* a survivor benefit equal to 3 months of your gross disability payment.

The survivor benefit will be paid if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If a benefit is payable to a person who is a minor or not capable of giving a valid release for any payment due, Prudential may, at its option, pay the amount payable to that person or to any person or institution that appears to Prudential to have assumed the custody and main support of that person. If any amount is so paid, Prudential will not have to pay that amount again.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Worksite Modification?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse your Employer for the cost of the modification up to the greater of:

- $1000; or

- the equivalent of two months of your gross disability payment.

This benefit is available to you on a one time only basis.

### How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;

- you to protect your retirement benefits; and

- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;

- obtaining medical and vocational evidence; and

- reimbursing pre-approved case management expenses.

# Long Term Disability Coverage

## REHABILITATION SERVICES

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a **rehabilitation program** available.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a rehabilitation program. If the rehabilitation program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The rehabilitation program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved rehabilitation program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential feels is appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit.

**Rehabilitation program** means a program designed to assist you to return to work.

### What Additional Benefits Are Payable When You Participate in a Rehabilitation Program ?

Prudential will send you a rehabilitation payment each month up to the **maximum period of rehabilitation payment** while you are:

- receiving long term disability benefits under the plan; and

# Long Term Disability Coverage

## REHABILITATION SERVICES

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a *rehabilitation program* available.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a rehabilitation program. If the rehabilitation program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The rehabilitation program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved rehabilitation program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential feels is appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit.

*Rehabilitation program* means a program designed to assist you to return to work.

### What Additional Benefits Are Payable When You Participate in a Rehabilitation Program ?

Prudential will send you a rehabilitation payment each month up to the *maximum period of rehabilitation payment* while you are:

- receiving long term disability benefits under the plan; and

83500
CRS-LTD-1001

(44819-74)

- participating in a rehabilitation program that has been approved by Prudential.

Your maximum period of rehabilitation payment is 12 months.

The monthly rehabilitation payment is equal to 10% of your monthly payment. But the monthly rehabilitation payment, together with your monthly payment, will not exceed the maximum monthly benefit.

*Maximum period of rehabilitation payment* means the longest period of time Prudential will make rehabilitation payments to you for any one period of disability.

## How Can Prudential Help You With Day Care?

Prudential will send you a day care payment each month up to the *maximum period of day care payment* while you are:

- receiving long term disability benefits under the plan; and

- participating in a rehabilitation program that has been approved by Prudential.

Your maximum period of day care payment is 12 months.

The monthly day care payment is equal to the amount of your *eligible day care expenses* up to the maximum monthly day care amount.

Your maximum monthly day care amount is equal to $500 times the number of *eligible children*.

*Maximum period of day care payment* means the longest period of time Prudential will make day care payments to you for any one period of disability.

*Eligible day care expenses* are the monthly expenses you incur for the day care of your eligible children that are:

- charged by a child-care provider who is not a member of your immediate family (i.e., you, your spouse, or a child, brother, sister or parent of you or your spouse);

- documented by receipts from the child-care provider which include the child-care provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

*Eligible children* means your children age 12 or under who live with you. Your children include your legally adopted children, and each of your stepchildren and foster children.

## How Can Prudential Help You With Spouse and Elder Care?

Prudential will send you a spouse and elder care payment each month up to the *maximum period of spouse and elder care payment* while you are:

- receiving long term disability benefits under the plan; and

- participating in a rehabilitation program that has been approved by Prudential.

Your maximum period of spouse and elder care payment is 12 months.

The monthly spouse and elder care payment is equal to the amount of your *eligible spouse and elder care expenses* up to the maximum monthly spouse and elder care amount.

Your maximum monthly spouse and elder care amount is equal to $500 times the number of *eligible family members*.

*Maximum period of spouse and elder care payment* means the longest period of time Prudential will make spouse and elder care payments to you for any one period of disability.

*Eligible spouse and elder care expenses* are the monthly expenses you incur for the care of your eligible family members that are:

- charged by a licensed adult care provider who is not a member of your immediate family (i.e., you, your spouse, or a child, brother, sister or parent of you or your spouse);

- documented by receipts from the licensed adult care provider which include the provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

*Eligible family members* means each of the following family members who has a *chronic illness or disability*:

- your spouse;

- your parents and grandparents who live with you; and

- your spouse's parents and grandparents who live with you.

*Chronic illness or disability* means one in which there is:

- a loss of the ability to perform, without *substantial assistance*, at least two *activities of daily living* for a period of at least 30 consecutive days; or

- a severe *cognitive impairment*, which requires *substantial supervision* to protect the family member from threats to health and safety, for a period of at least 30 consecutive days.

*Substantial assistance* means:

- the physical assistance of another person without which the family member would not be able to perform an activity of daily living; or

- the constant presence of another person within arm's reach which is necessary to prevent, by physical intervention, injury to the family member while the family member is performing an activity of daily living.

*Activities of daily living* means:

- Bathing - washing oneself by sponge bath, or in either a tub or shower, including the task of getting into or out of the tub or shower;

- Continence - the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel and bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag);

- Dressing - putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs;

- Eating - feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by feeding tube or intravenously;

- Toileting - getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene;

- Transferring - sufficient mobility to move into or out of a bed, chair or wheelchair or to move from place to place, either by walking, using a wheelchair or by other means.

*Cognitive impairment* means a loss or deterioration in intellectual capacity that is:

- comparable to and includes Alzheimer's disease and similar forms of irreversible dementia; and

- measured by clinical evidence and standardized tests that reliably measure impairment in the individual's short-term or long-term memory, orientation as to person, place or time; and deductive or abstract reasoning.

*Substantial supervision* means continual oversight that may include cueing by verbal prompting, gestures, or other demonstrations by another person, and which is necessary to protect the family member from threats to the family member's health or safety.

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

- That you are under the **regular care** of a **doctor**.

- Appropriate documentation of your monthly earnings.

- The date your disability began.

- Appropriate documentation of the disabling disorder.

- The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or any gainful occupation.

- The name and address of any **hospital or institution** where you received treatment, including all attending doctors.

- The name and address of any doctor you have seen.

For your Long Term Disability claim, we may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information (e.g., copies of your IRS federal income tax

return, W-2's and 1099's) as part of your proof of claim, or proof of continuing disability. This proof, provided at your expense, must be received within 30 days of a request by us. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

***Regular care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Doctor*** means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Hospital or institution*** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

83500
CCLM-1015

(44819-74)

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

You may be violating the state law if you, with the intent to defraud or knowing that you are facilitating a fraud against Prudential, submit an application or file a claim containing a false or deceptive statement. Any fraudulent act will result in denial or termination of your claim.

83500
CCLM-1015

(44819-74)

# Glossary

**Active employment** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 32 hours per week. If you are a partner or proprietor of the Employer, that work must be in the conduct of the Employer's business.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

**Activities of daily living** means:

- Bathing - washing oneself by sponge bath, or in either a tub or shower, including the task of getting into or out of the tub or shower;

- Continence - the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel and bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag);

- Dressing - putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs;

- Eating - feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by feeding tube or intravenously;

- Toileting - getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene;

- Transferring - sufficient mobility to move into or out of a bed, chair or wheelchair or to move from place to place, either by walking, using a wheelchair or by other means.

**Chronic illness or disability** means one in which there is:

- a loss of the ability to perform, without substantial assistance, at least two activities of daily living for a period of at least 30 consecutive days; or

- a severe cognitive impairment, which requires substantial supervision to protect the family member from threats to health and safety, for a period of at least 30 consecutive days.

83500
CGL-1001

(44819-74)

*Cognitive impairment* means a loss or deterioration in intellectual capacity that is:

- comparable to and includes Alzheimer's disease and similar forms of irreversible dementia; and

- measured by clinical evidence and standardized tests that reliably measure impairment in the individual's short-term or long-term memory, orientation as to person, place or time; and deductive or abstract reasoning.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Contract holder* means the Employer to whom the Group Contract is issued.

*Covered class* means your class as determined by the Contract Holder. This will be done under the Contract Holder's rules, on dates the Contract Holder sets. The Contract Holder must not discriminate among persons in like situations. You cannot belong to more than one class for insurance on each basis, Contributory or Non-contributory Insurance, under a plan. "Class" means covered class, benefit class or anything related to work, such as position or earnings, which affects the insurance available. If you are an employee of more than one Employer included under the Group Contract, for the insurance you will be considered an employee of only one of those Employers. Your service with the others will be treated as service with that one.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

*Doctor* means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Eligible children (Day Care)* means your children age 12 years or under who live with you. Your children include your legally adopted children, and each of your stepchildren and foster children.

83500
CGL-1001

(44819-74)

**Eligible day care expenses** are the monthly expenses you incur for the day care of your eligible children that are:

- charged by a child-care provider who is not a member of your immediate family (i.e., you, your spouse, or a child, brother, sister or parent of you or your spouse);

- documented by receipts from the child-care provider which include the child-care provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

**Eligible family members** means each of the following family members who has a chronic illness or disability:

- your spouse;

- your parents and grandparents who live with you; and

- your spouse's parents and grandparents who live with you.

**Eligible spouse and elder care expenses** are the monthly expenses you incur for the care of your eligible family members that are:

- charged by a licensed adult care provider who is not a member of your immediate family (i.e., you, your spouse, or a child, brother, sister or parent of you or your spouse);

- documented by receipts from the licensed adult care provider which include the provider's social security number or taxpayer identification number; and

- specified in the Prudential-approved rehabilitation program as needed in order for you to participate in the program.

**Eligible survivor** means your spouse, if living; otherwise, your children under age 25.

**Elimination period (LTD)** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential. If you become covered under a group long term disability plan that replaces this plan during your elimination period, your elimination period under this plan will not be met.

**Employee** means a person who is in active employment with the Employer for the minimum hours requirement.

**Employer** means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

**Employment waiting period** means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan. The period must be agreed upon by the Employer and Prudential.

**Evidence of insurability** means a statement of your medical history which Prudential will use to determine if you are approved for coverage.

**Gainful occupation** means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 60% of your indexed monthly earnings, if you are working; or

- 60% of your monthly earnings, if you are not working.

But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 60% of your indexed monthly earnings, if you are working; or

- 70% of your monthly earnings, if you are not working.

**Gross disability payment** means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

**Hospital or institution** means an accredited facility licensed to provide care and treatment for the condition causing one's disability.

**Indexed monthly earnings** means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

**Injury** means a bodily injury that:

- is the direct result of an accident;

- is not related to any cause other than the accident; and

- results in immediate disability.

Disability must begin while you are covered under the plan.

**Insured** means any person covered under a coverage.

**Law, plan or act** means the original enactment of the law, plan or act and all amendments.

**Leave of absence** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time or any period of disability is not considered a leave of absence.

**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**Maximum monthly benefit** means the maximum benefit amount for which you are insured under this plan as shown in the Benefits Highlights.

**Maximum period of day care payment** means the longest period of time Prudential will make day care payments to you for any one period of disability.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one disability.

**Maximum period of rehabilitation payment** means the longest period of time Prudential will make rehabilitation payments to you for any one period of disability.

**Maximum period of spouse and elder care payment** means the longest period of time Prudential will make spouse and elder care payments to you for any one period of disability.

**Mental illness** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Monthly earnings** means your gross monthly income from your Employer as defined in the plan.

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

**Monthly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Part-time basis (LTD)** means the ability to work and earn 20% or more of your indexed monthly earnings.

**Payable claim** means a claim for which Prudential is liable under the terms of the Group Contract.

**Plan** means a line of coverage under the Group Contract.

**Recurrent disability** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

**Reduced hours** means you are working less than the number of hours required to be considered in active employment.

**Regular care** means:

- one personally visits a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat one's disabling condition(s); and

- one is receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for one's disabling condition(s) by a doctor whose specialty or experience is the most appropriate for one's disabling condition(s), according to generally accepted medical standards.

**Maximum monthly benefit** means the maximum benefit amount for which you are insured under this plan as shown in the Benefits Highlights.

**Maximum period of day care payment** means the longest period of time Prudential will make day care payments to you for any one period of disability.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one disability.

**Maximum period of rehabilitation payment** means the longest period of time Prudential will make rehabilitation payments to you for any one period of disability.

**Maximum period of spouse and elder care payment** means the longest period of time Prudential will make spouse and elder care payments to you for any one period of disability.

**Mental illness** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Monthly earnings** means your gross monthly income from your Employer as defined in the plan.

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

**Monthly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Part-time basis (LTD)** means the ability to work and earn 20% or more of your indexed monthly earnings.

**Payable claim** means a claim for which Prudential is liable under the terms of the Group Contract.

**Plan** means a line of coverage under the Group Contract.

**Recurrent disability** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

**Reduced hours** means you are working less than the number of hours required to be considered in active employment.

**Regular care** means:

- one personally visits a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat one's disabling condition(s); and

- one is receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for one's disabling condition(s) by a doctor whose specialty or experience is the most appropriate for one's disabling condition(s), according to generally accepted medical standards.

**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Rehabilitation program** means a program designed to assist you to return to work.

**Retirement plan** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

**Salary continuation or accumulated sick leave (LTD)** means continued payments to you by your Employer of all or part of your monthly earnings, after you become disabled as defined by the Group Contract. This continued payment must be part of an established plan maintained by your Employer for the benefit of an employee covered under the Group Contract. Salary continuation or accumulated sick leave does not include compensation paid to you by your Employer for work you actually perform after your disability begins. Such compensation is considered disability earnings, and would be taken into account as such, in calculating your monthly payment.

**Self-reported symptoms** means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**Substantial assistance** means:

- the physical assistance of another person without which one would not be able to perform an activity of daily living; or

- the constant presence of another person within arm's reach which is necessary to prevent, by physical intervention, injury to oneself while one is performing an activity of daily living.

**Substantial supervision** means continual oversight that may include cueing by verbal prompting, gestures, or other demonstrations by another person, and which is necessary to protect one from threats to one's health or safety.

**Temporary layoff** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

**We, us, and our** means The Prudential Insurance Company of America.

**You** means a person who is eligible for Prudential coverage.

83500
CGL-1001

(44819-74)

**The Summary Plan Description**

**is not part of the**

**Group Insurance Certificate.**

**It has been provided by**

**your Employer and included in**

**your Booklet-Certificate**

**upon the Employer's request.**

# SUMMARY PLAN DESCRIPTION

This booklet is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974. ERISA requires that you be given a "Summary Plan Description" which describes the plan and informs you of your rights under it.

**Plan Name**

QinetiQ North America Operations, LLC Welfare Benefits Plan

**Plan Number**

510

**Type of Plan**

Employee Welfare Benefit Plan

**Plan Sponsor**

QinetiQ North America
7918 Jones Branch Drive
Suite 350
McLean, Virginia 22102

**Employer Identification Number**

61-1493470

**Plan Administrator**

QinetiQ North America
Attention: Human Resources Department
7918 Jones Branch Drive
Suite 350
McLean, Virginia 22102

**Agent for Service of Legal Process**

QinetiQ North America
Attention: Human Resources Department
7918 Jones Branch Drive
Suite 350
McLean, Virginia 22102

**Plan Year Ends**

December 31

(44819-74)

**Plan Benefits Provided by**

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey 07102

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). For all purposes of this Group Contract, the Employer/Policyholder acts on its own behalf or as an agent of its employees. Under no circumstances will the Employer/Policyholder be deemed the agent of The Prudential Insurance Company of America, absent a written authorization of such status executed between the Employer/Policyholder and The Prudential Insurance Company of America. Nothing in these documents shall, of themselves, be deemed to be such written execution.

The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

## Loss of Benefits

You must continue to be a member of the class to which this plan pertains and continue to make any of the contributions agreed to when you enroll. Failure to do so may result in partial or total loss of your benefits. It is intended that this plan will be continued for an indefinite period of time. But, the employer reserves the right to change or terminate the plan. This booklet describes your rights upon termination of the plan.

## Claim Procedures

### 1.   Determination of Benefits

Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

(a)   the specific reason(s) for the denial,

(b)   references to the specific plan provisions on which the benefit determination was based,

(c) a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

(d) a description of Prudential's appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following your appeals, and

(e) if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

**2. Appeals of Adverse Determination**

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by Prudential, utilizing individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a) the specific reason(s) for the adverse determination,

(b) references to the specific plan provisions on which the determination was based,

(c) a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d) a description of Prudential's review procedures and applicable time limits,

(e) a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(44819-74)

(f)    a statement describing any appeals procedures offered by the plan, and your right to bring a civil suit under ERISA.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second, voluntary appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Prudential shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the second level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

## Rights and Protections

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information about Your Plan and Benefits

- Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The plan administrator may make a reasonable charge for the copies.

- Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.